Good morning, Your Honors. May it please the Court, my name is Ali Saeedi, and I represent Ms. Parminder Kaur. I would like to reserve two minutes of my time, if I may. The threshold issue in this case pertains to the scope of review. Although the Board agreed with the immigration judge's ultimate conclusion in the case, to deny relief, the Board did not expressly adopt the findings nor reasoning of the immigration judge, but rather engaged in its own analysis. Therefore, the review in this case is limited to the Board's decision to deny Ms. Kaur's application for relief, a decision that was based on the lack of additional corroborative evidence. Now, in reaching this conclusion, the Board erred both legally and factually. First and fore- Let me just discuss your premise here. I thought by citing matter of Bourbono, they were saying that they did agree with the immigration judge's reasoning. Your Honor, I don't believe that that's the case in our view. Their parenthetical that they cited following their cite to matter of Bourbono made clear that the – what they were doing is simply making a statement that their conclusions coincide with the conclusion of the immigration judge. And that is supported by the final sentence, in fact, of their decision, which says, thus, we agree with the immigration judge's ultimate conclusion in this case. Does this ultimately matter? The reason I'm asking is because I actually think we have case laws saying that matter of Bourbono means that they are affirming the reasoning, and that's how I read it. But does it ultimately matter? I mean, you seem to be making an argument as to which this matters, so I want to see why it does. I believe that it matters as a threshold matter to see where the Court's focus should be in terms of the reasoning employed in the decision to deny miscore relief. However, ultimately, whether the Board restricts its – I'm sorry, whether this Court restricts its review to the Board's decision or whether it expands that review to include the immigration judge's decision, I believe that the record does not support the ultimate denial of relief in this case. So in terms of the reasons outlined by the Board in reaching its conclusion that corroborating evidence was necessary, the Board, first and foremost, made a primary legal error. No corroborating evidence is necessary in cases where there's not an explicit adverse credibility finding. And here, the Board did not make an explicit adverse – Did I.J. – didn't I.J. make an adverse credibility finding here? Yes, Your Honor. The immigration judge did make an adverse credibility finding. However, the Board did not. And where there's not an explicit adverse credibility finding, the asylum applicant's testimony must be credited as true, and no corroboration is required. Moreover, the – But that's why it does matter which we're doing. And the version that you're suggesting doesn't make any sense, because the whole thrust of the – what the BIA – what the BIA has written here is surely that she wasn't credible. They're simply trying to explain why she wasn't credible. So they're adopting the – I.J.'s conclusion that she wasn't – well, it says right here, we agree with the immigration judge's conclusion that given the inconsistencies in the record and the concerns with the Respondent's identity, the Respondent was required to prove reliable corroborating evidence to establish her credibility. And then they go on and find that she didn't provide reliable corroborating evidence. So if you don't read this against the I.J. opinion, it doesn't make any sense. Your Honor. You can't read it in isolation, in other words. Certainly. Well, I'd be happy to address the issues that the Board cited for supporting what in our view would be an implicit adverse credibility. In other words, I think you have to go forward on the premise that there was an adverse credibility finding. Certainly. I'd be happy to. I believe that any adverse credibility finding would not be supported by specific or cogent evidence that would rise to the level of substantial evidence on which to support such an adverse credibility finding. The Board made conclusory and rather vague references to problems that it perceived with several of the pieces of documentary evidence in the record. I'll take them in turn, because the Board did make several factual errors and misapprehended the record. Primarily, the Board seemed to be pointing to an inconsistency between Ms. Corr's testimony and information contained in affidavits by what the Board called her father and her father-in-law, referring to two sets of affidavits from each. That's incorrect. There was only one affidavit from Ms. Corr's father-in-law. And, in fact, that affidavit was completely consistent with Ms. Corr's testimony. The Board appears to be referring to the affidavits of a Ms. Cioran Cower, a village official or sarpanch, from Ms. Parminder Cower's village. So the confusion, although the Board doesn't explicitly outline it, seems to be regarding the date of Ms. Corr's second arrest. In the initial very brief affidavits that were submitted by her father and the village sarpanch, they very briefly described her second arrest and gave a date of 1995. Now, when that is seen in the context of their later, more detailed affidavits, which outline the entire context of the second arrest and compared with Ms. Corr's testimony, her declaration, her father-in-law's declaration, we can see that the situation and the context readily explains the apparent discrepancy. Ms. Corr's home was raided by the Indian police in late December of 1995. The police demanded that Ms. Corr and her husband turn over Ms. Corr's brother-in-law, Amarjeet Singh, within two weeks or else they would be back. And sure enough, two weeks later, they came back following the raid and ultimately detained Ms. Corr and her husband. Now, although we're only talking about a two-week period, it happened to fall on the switch of a calendar year. So that's where you get the initial police contact in 1995, but the ultimate actual arrest in early 1996. Ms. Corr's testimony was completely consistent on this point, and the additional affidavits that gave more detail and outlined the situation were also consistent with that. Furthermore, even if this can be seen as a discrepancy or an inconsistency, it is, in our view, a minor one that pertains to dates and does not go to the heart of her asylum claim. Now, the Board went on to make another glaring factual error parroted by the – of the decision of the immigration judge. The Board said that Ms. Corr stated that a copy of her birth record was available, when in fact that is absolutely not true. If the Court looks at page 173 of the administrative record, the initial colloquy that the Board and the immigration judge seem to be referring to is right there on the page, and there is no statement by Ms. Corr that she did have a birth record. So there's no inconsistency there, and the Board still says that there's a failure. What the Board also completely ignored is that Ms. Corr submitted an unavailability certificate for her birth record. May I ask you about the conflicting high school diplomas? Certainly, Your Honor. It's argued that they're not actually conflicting. If the Court looks at page 222 of the transcript, it's shown that the high school that Ms. Corr attended by her own testimony started out as B.S.D. High School, which was a private high school at the time, and later became a government high school. And it appears as though in the – in the asylum application, it was listed as government high school, which is what it is now, a government high school, whereas in the matriculation certificate, it was listed as B.S.D. The Board may also be talking about – State was different, too. Yes, I was – the date, which is based apparently on a handwritten notation in the asylum application, there was no testimony from an asylum officer talking about where that date came from, who gave that date. We don't believe that's conflicting. Where is the evidence that B.S.D., a private high school, is now a government high school? Your Honor, that's at 222. That is – Ms. Corr testified that – At 222, B.S.D. High School is a private school. Oh, but now it's government recognized. But that doesn't change its name, does it? Frankly, Your Honor, I'm not sure if it officially changes – The evidence that B.S.D. High School, which you said she graduated from, is now known by the school that she now says or later says she graduated. I mean, you know, it's like saying I graduated from St. Ignatius and I graduated from university. Some people say it's a difference. Your Honor, I believe that her response is such that it can be interpreted as having a name change or at least a recognition change of the school. But even if it's not, that is a minor inconsistency that in no way – But it goes to her identification, doesn't it? Your Honor, I believe that she – Is she really the person she says she is? Because there's another indication which you haven't addressed, which is her place of marriage. In one place, she says one thing. In another place, she says another. Your Honor, that – that is actually in an affidavit where it appears – That looks like a typo. Yeah, it looks like a typo. The convention appears to be naming a person by the village that they were from, and it appears that what was meant to be said there was Harjinder Singh of village Kamyara as opposed to that she married Harjinder Singh in village Kamyara. But again, these aspects do not go to the heart of her asylum claim and are minor inconsistencies. Thank you so much. But the – the school thing is somewhat more troublesome because usually people know where they went to high school and when they graduated. And obviously, if she was trying to take somebody else's identity, she could have found somebody who went to a different high school and then – and had the papers from that high school, but it's not her. Your Honor, we believe that she was consistent with her testimony as to her She provided other corroborating documentation, including a letter from the Gurdwara that she attended, letters from the Kali Dalman, pictures, affidavits. And she did present a matriculation certificate and gave an explanation as to the changing nature of the school that she attended, that it originally was BSD, and later it was a government high school. I don't believe that there's a true inconsistency there. And again, if there is, I believe that it does not go to the heart of her asylum claim. The government high school notation is on the interview form. It's not – she did not write that down. It was written down by the asylum interviewer. Is that right? Well, we actually don't know, Your Honor, because there's no testimony by the asylum officer. But it wasn't – was it on the application or was it on an interview notation? It was on a – it was a handwritten notation on her application. But didn't she – wasn't she asked to review that application at the beginning of the hearing or maybe it was a case with other cases? Is that right? I believe that that's true, but we have no evidence as to when that notation was made. Apparently, based on what the judge was assuming, which was that the asylum officer wrote that down, that would be in response to the actual conduct of the interview, which would have happened after she swore to the contents. I thought she swore to it, though, at the beginning of the hearing. I thought it was at the beginning of the hearing. After all – after the asylum interview, after everything, they showed her the asylum application and said, do you agree this is correct? Is that not right? The beginning of the immigration hearing? Yes. She did swear to it at the beginning of the immigration hearing. There is some confusion in the record, Your Honor, as to different copies of the asylum application. The court didn't have certain notations in their copy and Ms. Kors's counsel didn't have certain notations in hers, so it's not clear which copy she was actually swearing to. Thank you, counsel. I'm out of time. Thank you very much. Mr. Durant. Thank you, Your Honor. May it please the Court, my name is Edward Durant and I represent the United States. Substantial evidence supports the Board's and the immigration judge's conclusions that due to Ms. Kors's lack of credibility, she had to augment her testimony with reliable corroborating evidence, which she failed to do. The standard of review in this case is the immigration judge's decision as augmented by the Board's decision as well. Sentence of this case is Petitioner's identity. In fact, during the first hearing in this case, the immigration judge gave her fair warning that you came in on a fake passport, you had your picture on it, but it was someone else's passport. I suggest you start getting me documents that support your identity. Two years later at the merits hearing, she had failed to do that. Regardless of what Petitioner testifies to, there was no one reliable piece of evidence. Was identity always an issue in asylum cases? Yes, Your Honor, especially when coupled with inconsistent testimony. If we don't know who this person is. It started off with identity as being a central issue. Pardon me, Your Honor? The I.G. started off with identity as a critical issue. She did, and I think it. People who flee persecution may not always, you know, may take on a false name. That is true. In order to flee their country. Well, that is true, Your Honor, but she failed. She had contact and family back in India. She failed to put forth anything. In fact, the judge asked her if she had a driver's license for a scooter, which she did not. Anything. But does every person seeking asylum have to establish their true identity with some documentation from their home country? Yes, Your Honor, especially if their testimony. A regulation or case law that says that? No, Your Honor, but if their testimony is deemed inconsistent. In this case, it was. They should. They have to corroborate their testimony with reliable documents. She has not done that. Identity in that case, especially when her testimony is inconsistent, is of paramount importance. So we just had a case where the claim was that Singh was not credible. So in that case, was he required also to produce evidence of his true identity? Identity is one aspect of that, or reliable evidence that would corroborate his or her testimony. In this case. So let me just add. So is it your position that if the I.J. determines, finds inconsistencies in the applicant's testimony, that identity then becomes an issue? Yes, Your Honor. It becomes a factor that would help the Petitioner's case. Certainly, she did nothing to help her case. Yes. I mean, I gather here the problem is that she came in on false passports. Yes, Your Honor. In other words, it doesn't seem that it's always an issue, but it can be an issue if there's a reason for it to be an issue. Yes, Your Honor. In this case, when she comes on a false passport. I gather it's fairly standard to ask people for birth certificates, and often they come up with them, and therefore it's not an issue at that point. I'm sorry, Your Honor. It seems to be fairly standard from what I can tell from reading these transcripts to ask for birth certificates, and often people come in with the birth certificates at the very outset, and that sort of takes the issue off the table. From the records I've reviewed in immigration cases, it would appear that identity or birth certificate is something that is generally put forth. Not always, but I would think that it's something that's kind of standard in helping prove one's identity. But he or she never came up with a birth certificate, is that right? No, Your Honor. A certificate of non-availability. But in addition, she didn't have anything else that could point to her identity in any reliable fashion. Her two claims of persecution, and where the judge found she was inconsistent, were that she claimed she was persecuted in 1994 and again in 1996. The first alleged incident of persecution, she says it was because of her husband's attendance at a rally. If you look at her testimony, it was constantly shifting and changing in such a tenor that she was sort of amping up the causal connection between her participation at this rally, her husband's participation at the rally, and the eventual persecution that allegedly happened the next day. So that is inconsistent, and the Court can look at her testimony and at her asylum application. The second incident of alleged persecution. So were there actually direct conflicts, direct inconsistencies, or did she just elaborate? In terms of inconsistencies, she says that the reasons they came was that her husband attended a rally. Then she said she attended a rally. Then she said her brother-in-law attended the rally. What's inconsistent about that? It seems like she's just expanding or, you know, completing the detail. She expands, but at the same time she changes what his role was. Was he actually talking? Was he organizing it? Was he preparing food? Did she ever deny that the husband gave a speech at the rally before she said that he gave a speech? I do not believe she did so, Your Honor. So it isn't what Judge Pius says a fair characterization, that she recalled more details about the participation of the family at the rally. But there is one instance where she said, I cooked for the people. I didn't cook for the people. He did give a speech. No, you're correct, Your Honor. My brother-in-law wasn't there. He was there. There wasn't any flat contradiction, even as to any details. You're correct, Your Honor. But what one can see from looking at the record is it's kind of ratcheting up what they did. And if someone asks you, why were you arrested, you usually give a consistent answer. You know, a lot of these folks who are seeking asylum aren't very sophisticated. Also, it may be that she wasn't arrested because she attended the rally. She was arrested because her husband spoke at the rally, right? That's correct. Otherwise, if she was going there, she might not have done it, so that's why she didn't mention it. I mean, there's a lot of explanations that could be set forth in why her testimony was how it was, but ultimately, it's her burden. And if one looks at the context of her testimony, it's clear that a plausible reason is that she's changing her tune to increase her participation, her husband's participation, which would lead to a kind of another conclusion. That's why the police came after her. What was the significance of all this stuff about the brother-in-law changing his name? Well, it's something to do with this newspaper article? I mean, is that why it matters? Why else does it matter? Your Honor, the catalyst for the second arrest was because allegedly her husband and she did not turn in the brother-in-law, Mr. Amarjit Singh. Then she said he went by another name at birth. There's confusing testimony as to what his name really was. Then she presented an article that this gentleman was arrested. Again, that name didn't quite square with the name. 1991 under a different name. Pardon me, Your Honor? From 1991 under a different name. Yes. This was a name change. And the judge said, you know, normally this isn't, and I'm paraphrasing, normally this isn't such a big deal. But in this case, when she says that, you know, the catalyst for the second arrest was the brother-in-law, it doesn't make sense that, you know, she says his name is one thing, and the newspaper article has what apparently could be someone else's name. Wasn't it someone else's name using the alias of his current name? Weren't both names in the newspaper article? Both names, but there's a surname that's, I mean, the judge seemed to be well versed in Sikh society. She said he had a surname on there that didn't quite jive with what she said in her testimony. I think that was the touchstone of it. I see I have to sum up, so I will. Answer, Judge. Go ahead and answer, Judge. I'm sorry, Your Honor. Complete your thought. I think that the reason that the brother-in-law's name was an issue was because she gave different variations of it, and allegedly this Amarjit Singh was the reason for the second persecution. He was the – and if he doesn't exist or this person – or we don't know who he is, then it makes her claim less likely. Finally, can you talk a little about the – this school problem? Yes, Your Honor. It appears from what I can tell that the government school on the day it was written on the application on some forms but not others, and that although she was asked at the beginning of the hearing of check to go over it, we don't know that she went over the one that had the notation. Is that right? Your Honor, I don't know. Again, it is her burden. There is a clear difference between what – and again, since her identity is an issue in this case. But she doesn't have a burden to explain why some notation got on her application that she didn't write. But she has no explanation for it. All I know, Your Honor, is – Why does she have to explain why somebody else wrote something on her application when she didn't write? But then you're left with the confusing testimony of whether or not it's a government high school or not. We don't – But is that much clear, that whatever – that this notation, there's no reason to think she wrote it? Is that correct? Or that it was written on her behalf? I don't know who wrote it. I have no idea. I couldn't – I'd hazard to guess. But it is a factor that the board discussed. And, you know, when they found her incredible, they talked about the evidence she brought forward. And in the last ten seconds, I'd like to talk about these affidavits that her father-in-law and father brought in. Not only were they inconsistent with her testimony, when she realized they were inconsistent, she had them allegedly send out more affidavits after the lion's share of the merits hearing, and there's still inconsistencies in there. So – What are the inconsistencies now? Well, the first inconsistency was as to the date of the – Right. But that was changed. Right. And then there's the – And it's really – I mean, we're dealing with a couple weeks, really. I mean, it's either at the very end of 1995 or at the very beginning of 1996. So it's not anywhere near as big of an inconsistency as one might think. This is an important date because she alleges only really two incidences of persecution. And her testimony changed from September to December – to January. Her father says December 1995. This is an important date. A traumatic event like this, you would think one would have it nailed down. It's not like something, you know, when did I last go to the supermarket. I don't mean to make light of this, but it's her burden to show that she was persecuted. What other inconsistencies are there? The actual village where her – But that has to be a mistake, a typo, because if you read the sentence, it doesn't even make sense otherwise. It says that my daughter was married to Harjinder Singh in Village, Colorado, who was a member of Akali Dal. I mean, the who was refers to Harjinder Singh. So the in just doesn't even fit. It had to be of. First of all, why would he even be telling you where she was married? It doesn't even make any sense. It makes a lot more sense that he was telling her where the guy was from. Again, Your Honor, it's something she couldn't explain. She did explain. She didn't. She gave several reasons for it. Well, she did give a fairly stupid reason. It's true. And even her own counsel said her testimony was confusing. If it's confusing to her own counsel, and I appreciate his candor, how can it be – how can it meet its burden with the court? And that's about all I have to say. I just wanted to sum up. I think it's obvious what happened there. Other things aren't so obvious, but that one's pretty obvious. Okay. But, Your Honor, thank you for your time. Thank you, counsel. Thank you. The matter will be submitted. The next case, Singh Rule, 0372386, is submitted on the briefs. And then we're going to jump down to Harinder Singh, 0371571. We're going to take a case out of order. Well, the next case on the calendar was Sinderpal Singh, but counsel asked to go, had another appearance in another courtroom, and so he asked if he could be moved to the end of the calendar, which is fine with us. So I'd like to take up Harinder Singh, 0371571. Thank you.
judges: Paez, Berzon, Bea